United States District Court
Southern District of Texas
**ENTERED**
March 07, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Andrew Saleeba, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-17-3538 |
| | § | |
| Nancy A. Berryhill, | § | |
| *Acting Commissioner of the Social* | § | |
| *Security Administration* | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Andrew Saleeba appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (D.E. 9.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 7) and Defendant's Cross-Motion for Summary Judgment. (D.E. 12.) Having carefully considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 1. Procedural Posture

Saleeba applied for disability insurance benefits on March 6, 2014. (Tr. 221–29.) Saleeba claimed he was disabled due to bipolar disorder, schizophrenia, and

major depression, with an alleged disability onset date of May 31, 2012. (Tr. 245.) The Social Security Administration denied Saleeba's application May 7, 2014, and Saleeba appealed. (Tr. 170–75.) His application was denied upon reconsideration on August 25, 2014. (Tr. 177–79.)

Saleeba requested a hearing on October 20, 2014 (Tr. 186–87), and Administrative Law Judge (ALJ) Gary Suttles held a hearing on July 8, 2016. (Tr. 37.) On August 1, 2016, the ALJ issued a decision finding Saleeba not disabled. (Tr. 32.) Saleeba filed the present complaint in federal court to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five-Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v.*

*Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ must decide whether the claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c). A person who does not have a "severe impairment" is not disabled. *Wren*, 925 F.2d at 125. An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Once the ALJ finds that the claimant has any severe impairment, the ALJ must determine, at step three, if the impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). If the requirements of a Listing are met, the individual will be considered disabled. 20 C.F.R. § 404.1520(d).

For the impairments that do not meet or equal a listed impairment, the ALJ must proceed to assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

The RFC is used to determine whether the claimant can perform past relevant work at step four. *Id.* If the claimant is capable of performing the work the claimant has done in the past, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant's RFC precludes the claimant from performing past relevant work, the ALJ must proceed to step five. 20 C.F.R. § 404.1520(g)(1).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Id.*

**B. Substantial Evidence Standard of Review**

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotations and citations omitted). Substantial

evidence exists if the record "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal quotations omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (internal quotations omitted). The reviewing court is required to examine the record as a whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. ALJ's Decision and Administrative Records

#### A. Hearing

At Saleeba's hearing, the ALJ heard testimony from Saleeba, his mother, and a vocational expert (VE). Saleeba testified that he had previously worked as a valet (Tr. 49), waiter (Tr. 49), and music tutor. (Tr. 43.) Saleeba testified that he had been treated for schizophrenia, major depressive disorder, and ADHD since 2011, when he began experiencing hallucinations and delusional thoughts. (Tr. 45.)

He testified about his history of drug use and rehabilitation. (Tr. 46.) Saleeba testified that he saw a therapist every six weeks. (Tr. 47.) He testified that, with his mother's assistance, he had taken medication for five years that helped him see clearly and prevented hallucinations or delusions. (Tr. 50). He testified about his history of hospitalization for mental health treatment. (Tr. 48.)

Saleeba testified about his typical daily activities. (Tr. 54–56.) He testified that in the first half of 2015, he discontinued one of his medications, Resperidal, because it made him gain weight. (Tr. 66–68.) He testified about certain incidents reflected in his treatment records, such as drawing with a marker on his arms, getting minor burns on his forearm, thinking his family was occult, and experiencing a burning sensation in his genitals. (Tr. 68–72.)

Saleeba's mother testified about instances of his son's delusional or erratic behavior, such as thinking that the FBI was coming to arrest him and his family. (Tr. 74–75.) She testified that his daily activities consisted mostly of taking his medication, eating, smoking cigarettes in the garage, and taking naps. (Tr. 79–80.)

Based on the testimony and the SSA's consulting examiners' reports, the ALJ asked the VE what kind of work, if any, could be done given a residual functional capacity (RFC) with no exertional impairments and the capacity to "get along with others," "understand simple instructions," "concentrate and perform simple tasks," "respond and adapt to workplace changes and supervision," and

work in an environment with "occasional" contact between the public and the employee. (Tr. 86–87.) The VE testified that such a person could find work as a small product assembler, office cleaner, or hand packager. (Tr. 87.)

**B. The ALJ's Decision**

The ALJ issued his decision on August 1, 2016. At step one, the ALJ found that Saleeba had not engaged in substantial gainful activity since May 31, 2012. (Tr. 17.)

At step two, the ALJ found that Saleeba had severe impairments from bipolar disorder and depression. (Tr. 18.) The ALJ found that Saleeba's asthma, hypertension, obesity, and drug abuse were non-severe. (Tr. 22.)

At step three, the ALJ found that none of Saleeba's impairments was medically equivalent to a Listing. (Tr. 22.) Before reaching steps four and five, the ALJ determined that Saleeba had no physical exertional limitations. He determined Saleeba had the RFC to:

> (a) sit, stand, and walk for six of eight hours each for a full eight-hour workday, (b) push/pull and perform gross and fine movements without limit, (c) climb stairs and ladders, run, bend, stoop, crouch, crawl, balance, twist, and squat, (d) get along with others, (e) understand simple instructions and concentrate and perform simple tasks, (f) respond and adapt to workplace changes and supervision but in an occasional public/employee contact setting.

(Tr. 25.)

The ALJ found Saleeba had no past relevant work to which he could return, but that considering his age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Saleeba could perform. (Tr. 30.) Therefore, the ALJ concluded, Saleeba had not been under a disability since May 31, 2012. (Tr. 31.)

### 4. Analysis

Saleeba's motion for summary judgment focuses on the ALJ's decision at step three. Saleeba argues that the ALJ's analysis should have stopped at step three with a finding that Saleeba's impairments were presumptively disabling under the Listings. (D.E. 9 at 6 ("Defendant erred at Step Three . . . ."), 44 ("[T]he only question is whether Movant suffers from a debilitating neurocognitive disorder, [s]chizophrenia or [s]chizoaffective type symptoms and/or [m]ajor [d]epression with psychotic features.").)[1] There is no dispute as to the ALJ's analysis at steps one and two. Neither does Saleeba challenge the ALJ's determination of Saleeba's residual functional capacity (RFC) or the work the ALJ identified as available to Saleeba based on that RFC. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) ("[A] party must press and not merely intimate the argument

---

[1] Saleeba appears to be referring to the Listings according to their headings at the time of his motion for summary judgment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2017) §§ 12.02 ("[n]eurocognitive disorders"); 12.03 ("schizophrenia spectrum and other psychotic disorders"); 12.04 ("depressive, bipolar and related disorders.").

8

during the proceedings before the district court."); *Clay v. Nelson Coleman Corr. Ctr. Med. Staff & Corr. Officers*, No. CIV.A. 10-1590, 2012 WL 1188463, at *1 (E.D. La. Apr. 9, 2012) ("[A]rguments not made before a magistrate judge are normally waived.").

With respect to the ALJ's step three analysis, Saleeba argues: (1) that the ALJ did not consider Listings 12.02 or 12.03 (D.E. 9 at 6); (2) that the ALJ improperly weighed the evidence (D.E. 9 at 22); and (3) that the ALJ erred by failing to call a medical expert at the hearing or order a post-hearing consultative exam to determine whether Saleeba met one of the Listings. (D.E. 9 at 53).

At step three of his decision, the ALJ found that Saleeba "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant regulations. (Tr. 22.) The ALJ reasoned that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. 22.)

**A. The Listings**

"In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Each listing contains multiple paragraphs of criteria. *See id.* If the claimant is not actually working and his

impairments match or are equivalent to the criteria in one of the listed impairments, he is presumed to be disabled and qualifies for benefits without further inquiry. *See id.* at 532; *see also* 20 C.F.R. § 416.920(d). When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original).

"Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citation and quotation marks omitted). Such procedural errors are deemed prejudicial warranting remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

## B. The ALJ's Consideration of the Listings

Saleeba argues the ALJ failed to consider whether Saleeba's impairments met all of the relevant Listings. (D.E. 9 at 52–53.) The ALJ explicitly considered

the criteria of the Listings addressing schizophrenic, paranoid, and other psychotic disorders (Listing 12.03) and affective disorders (Listing 12.04). Saleeba argues that the ALJ failed to consider Listing 12.02, addressing neurocognitive or organic mental disorders. Saleeba also argues that the ALJ failed to consider Listing 12.03, which is factually incorrect. (*See* Tr. 22–23.)

The court finds that the ALJ properly applied the Listings. While the ALJ's decision does not explicitly mention Listing 12.02, the absence of explicit reference to the Listing does not merit reversal for the following reasons.

Listings 12.02, 12.03, and 12.04 each contain three paragraphs of criteria—"A," "B", and "C." 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02–12.04 (2015).

The Paragraph B criteria are identical across Listings 12.02, 12.03, and 12.04. They require that the claimant suffer from an impairment or combination of impairments

> [r]esulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social function; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

*See* Listings §§ 12.02(B), 12.03(B), 12.04(B).

The Paragraph C criteria are also identical across Listings 12.02, 12.03, and 12.04. They require:

> Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*See* Listings §§ 12.02(C), 12.03(C), 12.04(C).

In order to be found to have met Listing 12.02, 12.03, or 12.04, Saleeba needed to show that he met Paragraph B or Paragraph C. The ALJ explained that Saleeba did not meet Paragraphs B or C of Listings 12.03 or 12.04. Because the criteria are identical, the ALJ's findings as to Paragraph B and Paragraph C apply equally to all three Listings. As discussed below, the ALJ's determinations regarding Paragraphs B and C were not in error and were supported by substantial evidence. The ALJ's failure to explicitly mention Listing 12.02 is thus harmless error. *See Lara v. Berryhill*, No. CV H-16-3322, 2017 WL 5952725, at *4 (S.D.

Tex. Nov. 28, 2017) (holding the ALJ's failure to explicitly consider one Listing "harmless error" because the findings on another mental-health Listing applied equally to the unmentioned Listing) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).

ii. Paragraph B Criteria

In addressing the Paragraph B criteria, the ALJ relied on the opinions of the state agency mental health consultants (SAMHCs). The SAMHCs found that Saleeba had "moderate" restrictions in each of the four criteria, rather than the required "marked" restrictions in at least two of the four criteria. The ALJ found the SAMHCs' opinions consistent with the record evidence. (Tr. 23 (citing Tr. 149, 160 (SAMHC opinions)).) The ALJ reviewed Saleeba's records through the lens of each of the four Paragraph B criteria in detail. (Tr. 23–24.)

First, the ALJ discussed Saleeba's activities of daily living, which he found were subject to "moderate restriction." (Tr. 23.) He correctly noted that Saleeba stated in a Function Report submitted to the SSA that he performs various personal care activities. (Tr. 254.) In the same Report, Saleeba stated that he did house chores, shopped for groceries, paid bills, and managed finances. He stated he went outside daily, traveling by foot, public transportation, car, or bicycle. He went to therapy five times a week. He stated that he regularly enjoyed various artistic experiences and media. (Tr. 255–57.) The record also reflects that he took care of

plants (Tr. 725); taught music to adults and children (Tr. 524); and read classical literature, including James Joyce's *Ulysses*. (Tr. 54.)

Second, the ALJ discussed Saleeba's social functioning, which the ALJ found was subject to "moderate difficulties." (Tr. 24.) The ALJ correctly noted that, as Saleeba reported in his Function Report, Saleeba spent time with others (Tr. 257), had lost interest in socializing with new people but was otherwise friendly (Tr. 258), and lost a job because people did not like him because he asked too many questions. (Tr. 259.) Saleeba was also described as polite and friendly by medical and mental health professionals who encountered him. (*E.g.*, Tr. 525.)

Third, the ALJ discussed Saleeba's concentration, persistence, or pace, which he found were subject to "moderate difficulties." (Tr. 24.) The ALJ noted that Saleeba reported that he has issues with memory, concentration, understanding, and ability to complete tasks and follow directions, but also that he follows written instructions pretty well and has some difficulty following spoken instructions. (Tr. 24 (citing Tr. 258–59).) Saleeba also reported that he handles stress and changes in routine "ok." (Tr. 259.) The ALJ also referred to Saleeba's activities of daily living, and highlighted that driving requires the use of many faculties pertinent to this factor. (Tr. 24, *see also supra* this Section (discussing activities of daily living).)

Fourth, the ALJ discussed Saleeba's episodes of decompensation, finding that they were not "marked" or "repeated" as required by the Listings. (Tr. 24.) Under the Listings, for a claimant to have experienced "repeated" episodes of decompensation, the claimant must have experienced three episodes within one year, or an average of one episode every four months, each lasting for at least two weeks. (Tr. 24; *see* Listing 12.00A (2015).) The ALJ noted two periods of hospitalization. (Tr. 24 (citing Tr. 295, 317).) Those episodes took place over the course of about a year, and only one of them lasted more than two weeks. (Tr. 24 (citing Tr. 295, 317).)

The ALJ's determination that Saleeba did not meet Paragraph B of the Listings was supported by substantial evidence and was not in error.

iii. Paragraph C

The ALJ found "[t]he evidence did not establish the presence" of the Paragraph C criteria. (Tr. 23 (citing Tr. 120–137, 142–163).) The ALJ reasoned that Saleeba "[did] not show evidence that he needs a highly supportive environment or is unable to function independently outside the home. [Saleeba] can cope with limited change and increased mental demands." (Tr. 24; *see supra* Section 4(B)(i) (discussing activities of daily living, including adaptive activities, personal care activities, and activities outside the home).)

The ALJ considered Paragraphs B and C of Listings 12.03 and 12.04, which are identical to Paragraphs B and C of Listing 12.02. The ALJ's findings with respect to Paragraphs B and C precluded a finding of a severe impairment under Listing 12.02. *See Lara*, 2017 WL 5952725, at *4 (citing *Taylor*, 706 F.3d at 603). The ALJ's determinations as to Paragraphs B and C were supported by substantial evidence.

### C. Weight of the Evidence

Saleeba argues that the ALJ improperly weighed the evidence. (*See, e.g.*, D.E. 9 at 22 (arguing that "ample documentation exists" to support a disability finding).) He asks this court to reweigh the evidence in his favor. The court may not, however, "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). This court finds credible evidentiary choices and medical findings support the ALJ's weighing of the evidence. Saleeba disputes, specifically, the way the ALJ weighed Saleeba's GAF scores and the opinions of two medical sources, Dr. Strutt and the SAMHCs.

i. GAF Scores

The Global Assessment of Functioning is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. 1994) (DSM–IV); *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001). Saleeba argues that the ALJ should have assigned his GAF scores controlling weight in determining whether he was disabled.

Saleeba's GAF scores were assessed at levels below 50 between 2012 and 2014, which, according to the DSM-IV, reflect a "serious mental symptomatology." (Tr. 18 (citing the DSM-IV).)

"A low GAF score," however, "is not necessarily dispositive of a claimant's disability." *Johnson v. Astrue*, No. 4:11-CV-03652, 2013 WL 5785600, at *8 (S.D. Tex. Apr. 10, 2013) (citing *Stephens v. Astrue*, No. CIV.A. H-10-3251, 2011 WL 6826828, at *8 (S.D. Tex. Dec. 28, 2011)). The ALJ's finding that Saleeba's GAF scores should not control the disability determination is not in error and is supported by the record.

The ALJ did consider Saleeba's GAF scores in making his step three determination. Saleeba's GAF scores were 45 on May 24, 2012 (Tr. 932); 40 in June, 2012 (Tr. 416); between 20 and 30 in March, 2013 (Tr. 304, 308); 25 in

February, 2014 (Tr. 320); 36 on April 18, 2014 (Tr. 357); and 48 on November 5, 2014. (Tr. 564.) The ALJ recognized that these GAF scores "indicated symptomatology ranging from serious to some danger of hurting self or others" at certain points. (Tr. 23.)

The ALJ assigned those scores "only some weight" because other evidence showed that his mental condition was "not markedly severe." (Tr. 23; *see supra* Section 4(B)(i) (discussing activities of daily living).) For example, the ALJ discussed Saleeba's lowest GAF score of 20 in March 2013, upon his admission to Austin State Hospital. (Tr. 23 (citing Tr. 304, 308).) He noted that when Saleeba was discharged from Austin State Hospital a couple weeks later, his condition was resolving. (Tr. 23; Tr. 296 (discharge summary stating Saleeba was "alert and oriented," "cooperative," "beginning to doubt that [his paranoid] suspicions were true," "compliant with medication without side effects").)

Earlier in the decision, the ALJ discussed Saleeba's most recent GAF score, assessed at 48 on November 5, 2014. (Tr. 20.) The ALJ correctly noted that this score was issued near times when Saleeba's "[m]ental status examination was within normal limits" and he exhibited good orientation, attention, concentration, mood, and affect. (Tr. 20 (citing Tr. 539, 562).)

The ALJ's decision not to accord the GAF scores controlling weight and the ALJ's overall determination at step three were supported by substantial evidence and were not in error.

### ii. Medical Opinion Sources

The ALJ considered two medical opinion sources: the opinion of Dr. Adriana Strutt (Tr. 29) and those of the state agency mental health consultants (SAMHCs). (Tr. 30.) The ALJ accorded little weight to the opinion of Dr. Strutt and great weight to the opinions of the SAMHCs. (Tr. 29–30.) Saleeba argues that according the SAMHCs greater weight than Dr. Strutt merits remand. The court disagrees. The ALJ's decision to weigh these two sources differently was not in error and was supported by substantial evidence.

### (a) Dr. Strutt

Dr. Strutt opined that Saleeba is unable to sustain gainful employment. (Tr. 29 (citing Tr. 527).) But the ALJ was not required to give that opinion controlling weight in his analysis for three reasons.

First, Dr. Strutt's general findings and opinions are not entitled to "controlling weight" because Dr. Strutt was not Saleeba's treating physician. 20 C.F.R. § 404.1527(c)(2).

Second, as correctly noted by the ALJ, under 20 CFR §§ 404.1527 and 416.927, Dr. Strutt's opinion that Saleeba is disabled is not a "medical opinion"

within the meaning of the SSA regulations because it is one of the enumerated types of opinions reserved to the Commissioner. 20 CFR §§ 404.1527, 416.927(d) (stating that "[o]pinions on some issues . . . are not medical opinions," including "[o]pinions that you are disabled").

Third, the ALJ considered the factors listed in 20 C.F.R. § 404.1527 in assigning weight to Dr. Strutt's opinion. *See* 20 C.F.R. § 404.1527(c)(1)–(6) (listing factors "[e]xamining relationship," "[t]reatment relationship," "[s]upportability," "[c]onsistency" with the record "as a whole," "[s]pecialization," and "[o]ther factors"); *see also* Tr. 29 ("[T]he treating notes and other notes in the record discussed thoroughly in this decision do not support this opinion[.]"); 23 ("[T]his opinion is based on a[] one-time snapshot, and Dr. Strutt does not have a documented treating relationship with [Saleeba]."). The decision not to accord Dr. Strutt's opinion great weight based on these factors is supported by the record.

(b) State Agency Mental Health Consultants

On the other hand, the ALJ noted that the SAMHCs' medical review "found [Saleeba] able to understand, remember, and carry out detailed but not complex instructions; ma[k]e decisions; attend and concentrate for extended periods; and respond appropriately to changes in routine work setting." (Tr. 30 (citing Tr. 149, 160).) The ALJ accorded these opinions "great weight" because they were consistent with the objective medical evidence and evidence of Saleeba's actual

daily activities. (Tr. 30; *see also* Tr. 23 ("I give great weight to these [SAMHC] opinions because the record evidence discussed below supports them."); *see also supra* Section 4(B)(i) (reviewing record evidence).)

The ALJ nonetheless found the claimant retained the mental residual functional capacity only to perform more limited functions: "understand simple instructions," "concentrate and perform simple tasks," and work "in an occasional public/employee contact setting." (*Compare* Tr. 25 *with* Tr. 30.) The ALJ based this modification on hearing testimony and additional record evidence. (Tr. 30.)

The ALJ properly explained the reasoning behind his evaluation of Saleeba's symptoms. Under SSR 16–3P, "it is not sufficient for our adjudicators to make a single, conclusory statement." 2017 WL 5180304, at *10. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* The ALJ's decision to accord greater weight to the state agency mental health consultants than to Dr. Strutt was not conclusory. The ALJ's decision fulfilled his obligations to explain his determination. The ALJ complied with SSR 16–3P and 20 C.F.R. § 404.1527.

### D. Medical Expert or Consultative Exam

Saleeba argues that the ALJ improperly failed to call a medical expert at Saleeba's hearing or to order a post-hearing consultative evaluation of Saleeba's condition. (D.E. 9 at 53.) The responsibility to determine whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Therefore, an ALJ can interpret medical evidence to determine whether the claimant's impairments prohibit him from obtaining employment. In general, the ALJ's decision to consult a medical expert or advisor is a discretionary one. *See Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir. 1989) ("[N]othing indicates that a [medical advisor's] evaluation of the post-hearing evidence was required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations."). The decision to obtain an additional expert examination is solely within the ALJ's discretion unless the record establishes that another examination is necessary. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

Saleeba raises no specific issue that a medical expert or consultative exam should have more fully developed and which would have resulted in a different decision. (*See* D.E. 9 at 53.) Having found that substantial evidence supports the ALJ's findings, the court finds no error in the ALJ's decision not to obtain such additional evidence.

## 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each of the five sequential steps. Therefore, the ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the Court recommends that Defendant's cross-motion for summary judgment be GRANTED, and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendations to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on March 5, 2019.

Peter Bray
United States Magistrate Judge